**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0534n.06
Filed: July 30, 2007

**No. 06-6327**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ARIA BREWER, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| CEDAR LAKE LODGE, INC., | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:** **GIBBONS and COOK, Circuit Judges; and CLELAND, District Judge.**[*]

**CLELAND, District Judge.** Plaintiff-Appellant Aria Brewer initiated this action against

Defendant-Appellee Cedar Lake Lodge, Inc. ("Cedar Lake") under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Kentucky Civil Rights Act, Ky. Rev. Stat.

§ 344.040. Brewer alleged that her employer, Cedar Lake, decided to not hire her for a newly-

created position because of her race. The district court granted summary judgment to Cedar Lake,

finding that Brewer had failed to present sufficient evidence to establish a *prima facie* case of

discrimination either by direct or circumstantial evidence. The district court also found in the

alternative that Brewer could not establish that Cedar Lake's proffered legitimate business reason

for selecting a different candidate was pretextual. Brewer appeals, asserting that she presented both

direct and circumstantial evidence of discrimination sufficient to withstand Cedar Lake's summary

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

judgment challenge. Brewer also argues that the district court applied the incorrect standard when analyzing her *prima facie* case.

Although we disagree with Brewer in part – she did not present direct evidence of discrimination – we agree with her that she at least presented circumstantial evidence of racial discrimination affecting the employment decision and enough evidence to show that she was similarly situated compared to the person who was awarded the position. We vacate the district court's grant of summary judgment and remand for further proceedings.

**I.**

Cedar Lake is a non-profit corporation that provides an Intermediate Care Facility and comprehensive support services for individuals with mental retardation. Brewer, an African-American, began working at Cedar Lake as a habilitation aide in January 2002. Brewer worked with Cedar Lake clients in their day-to-day life activities.

Cedar Lake offered a Leisure Class for its resident clients, designed to provide active treatment services and an Adult Day Program for its non-resident clients, designed to provide treatment options. In late summer of 2003, both of these programs were administered by the Adult Day Program Coordinator, who at that time was Frank Goodloe. Around this time, Goodloe requested that Toni Crouch, the Director of Service Planning and Compliance, create a new position to provide assistance in working with clients in both the Leisure Class and the Adult Day Program. The position was necessary to help Goodloe and his assistant, Leslie Sallee, because of the increase

of clients. Goodloe and Sallee explained to Crouch that they needed someone on a daily basis, rather than having a new face in every day, so that the clients could become familiar with the aide and the aide could become familiar with the clients. Goodloe wanted someone whom he could trust, who was already familiar with the clients, and who would be able to handle behavior issues that might arise.

Thus, in August 2003, Cedar Lake created the position of Adult Program Aide. The position was posted internally, and only existing Cedar Lake employees were considered. Crouch delegated the duty of interviewing candidates to Goodloe, but retained ultimate hiring authority. The Adult Program Aide job description was modeled after the habilitation aide job description, and the job posting stated as follows:

JOB POSTING

Position in ADP
Hours 8:00 am – 4:00 pm
Monday – Friday

This person will function as a member of the Adult Day Program Staff. They [sic] will have the responsibility of planning, implementation and documentation of each client and resident of the Adult Day Program. This person will be administratively responsible to the Adult Day Coordinator.

Functions

To assist in the development, implementation and monitoring of participants in the Adult Day Program activities program plan with the goals of maximizing each participant['\]s physical, emotional, social skills and abilities.

Assistance with the coordination, planning and scheduling with various participant field trips, outings and special events, etc. . . .

Attend Resident Services Staff meetings and individual meeting[s] with supervisor as scheduled.

To drive vehicles, as necessary, to provide transportation for activities. Enforce and maintain safety during all activities.

Maintain compliance with all regulations, including, but not limited to[,] ICF/MR regulations and Adult Day Health Program Regulations. Perform other related work as assigned.

If interested contact Frank Goodloe, to set up interview.

Brewer applied and interviewed for the new position. After all the interviews were completed, Goodloe and Sallee discussed the candidates and concluded that Brewer was their top choice. Goodloe then discussed the candidates with Crouch, explaining the interview process, the questions that were asked, the answers the candidates gave, and the qualifications of each candidate. Goodloe told Crouch that Brewer was the best candidate for the job, stating, among other things, that she was very confident, held herself well in class and during her interview, and worked well with each client. During his deposition, Goodloe, an African-American, recounted his version of the next part of the conversation:

> And that was when [Crouch] said, "You know if you hire Aria what people are going to think." And I said, "What do you mean? What are people going to think?" And she said, "You know what they're going to think." And I said, "Are you saying that I was hiring her because she was black?" And she said, "yes." And I said, "That is a possibility." I said, "But that's not the reason why I'm hiring her. I'm hiring her because I feel that she is the best person for the job."

Goodloe testified that he and Crouch then discussed another candidate, Stacey Sharp, a white female. Goodloe told Crouch that while Sharp was "good" she "didn't blow [him] away," and she was not the best person for the job. Goodloe expressed to Crouch that Sharp did not work as well

4

with the clients as Brewer did and, although she was not the worst candidate, she was not the best.

Crouch, however, stated that Sharp had seniority over Brewer and also noted that Sharp had applied

and been rejected for other positions. She also mentioned the fact that Sharp had experience as a

behavior technician. Crouch told Goodloe that Sharp had applied for another position as a physical

therapy aide and if she was hired for that position, then Goodloe could hire Brewer. According to

Goodloe, Crouch stated that if Sharp did not get the physical therapy aide job, then Goodloe should

hire Sharp instead of Brewer. Goodloe testified that he was not comfortable with that decision

because he wanted to hire Brewer.[1]

About a day later, Goodloe heard from the physical therapist that Sharp would not be offered

the physical therapy aide job because she would not be able to work several days a week. Indeed,

Goodloe expressed that he also did not want to hire Sharp because he wanted a full-time person who

would be present every day. At least for the current semester, Sharp's school schedule would

interfere with her work schedule on Tuesdays and Wednesdays.

Shortly thereafter, Goodloe and Crouch again debated the merits of Sharp and Brewer. Jason

Squires, Cedar Lake's Executive Director, was also present. After hearing both views, Squires

agreed with Crouch and Goodloe eventually "gave up because [he] knew [he] was not going to get

[Brewer]." Sharp was offered and accepted the position. About one week later, Goodloe tendered

---

[1]According to Crouch's affidavit, the subject of Brewer's race did not arise until after Goodloe and Crouch had selected Sharp for the position. She states that after the decision was made, she stated something to the effect of "what would others have thought had we selected Brewer."

his resignation. Goodloe testified that he accepted a new job prior to the decision to hire Sharp and prior even to the conversation with Crouch where she asked what people would think if he hired Brewer. Nonetheless, he indicated that, although he was already "starting to think about leaving the job," after Crouch's statement "it was kind of like all right, yeah. I definitely felt it was time for me to go." Goodloe also testified that if Brewer had been white, he believes she would have been hired for the Adult Program Aide position.

About one month after Sharp was hired, Brewer complained to Cedar Lake department heads Florence Healy-Risinger, George Throne and Squires. Squires made notes of this meeting. The notes indicate that he told Brewer that he had discussed Sharp's hiring with Crouch and Goodloe and that they had all agreed that Sharp and Brewer were "equally qualified," but that Sharp was hired because of her seniority. Brewer had been informed by two different people that she had been Goodloe's first choice but that Crouch had been concerned about the appearance of Goodloe hiring an African-American. Squires said that he would look into it and get back to her.

Squires spoke with Sallee and again took notes of his conversation. The notes state that Sallee's understanding was that Crouch had wanted Sharp because she had been turned down for other positions and, additionally, that people might perceive hiring Brewer as a "black issue." Sallee also told Squires that Goodloe had resigned for this reason, because he did not have his supervisor's support, and because there were racial undertones to the situation with which he was not comfortable.

Squires then turned his investigation over to Diana Ragsdale, who conducted interviews of

Crouch, Brewer, Sallee and Goodloe.  Although Ragsdale noted two different accounts of how race was first brought up between Crouch and Goodloe,[2] she determined that race was "inappropriately introduced" into the selection process of the Adult Program Aide position.  Ragsdale recommended reversing the original selection for the position, reopening the position, and allowing a second selection by someone who was not involved in the first selection.  This course of action was followed, and a second round of interviews was conducted by Squires and Dennis Feaster.  Brewer, Sharp and Billy Hayden interviewed for the position, and Hayden, an African-American male, was selected.

Brewer filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 19, 2004, claiming race discrimination in the initial employment decision selecting Sharp and retaliation in the second employment decision selecting Hayden.[3]  The EEOC found reasonable cause to believe that discrimination occurred in the selection of Sharp, but no reasonable cause that retaliation occurred in the selection of Hayden.

After receiving her right to sue letter, Brewer filed this action against Cedar Lake, alleging

---

[2]Ragsdale's investigation notes record that, when asked whether race was ever mentioned during the selection process, Crouch said, "Absolutely not" and "Never," but that, after a brief interruption, Crouch corrected herself and said that Goodloe might have mentioned it after they selected Sharp.  Ragsdale's investigation report indicates that Goodloe stated that Crouch mentioned race when he recommended Brewer as the top candidate, while Crouch stated that Goodloe brought up race after he and Crouch together selected Sharp for the position.  Later, in her deposition and affidavit, Crouch testified that she indeed was the one to bring up race, but that she brought it up after Sharp was selected.

[3]Brewer no longer works at Cedar Lake, having accepted a position with another employer in September 2006.

discrimination under Title VII and the Kentucky Civil Rights Act, based only upon the initial selection of Sharp. Following discovery, Cedar Lake filed a motion for summary judgment, which the district court granted. The district court found that Brewer had failed to present sufficient evidence to show a *prima facie* case of discrimination. The district court also found that, even if she had shown a *prima facie* case, she had failed to present sufficient evidence that Cedar Lake's proffered reason for selecting Sharp was pretextual.

Brewer timely appealed, and the EEOC has appeared and filed a brief as an *amicus curiae* in support of Brewer.

## II.

We review the district court's order granting Cedar Lake's motion for summary judgment *de novo,* using the same summary judgment test as the district court. *Zambetti v. Cuyahoga Cmty. College,* 314 F.3d 249, 255 (6th Cir. 2002) (citing *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995)). Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

**III.**

In order to establish a claim of race discrimination, Brewer must either present direct evidence of discrimination or indirect, circumstantial evidence of discrimination through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties first dispute whether Brewer has presented direct evidence of discrimination.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen,* 229 F.3d at 563 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)).

Brewer contends that Crouch's statement, as relayed by Goodloe, constitutes direct evidence of discrimination. Specifically, Brewer points to the conversation in which Crouch stated, "You

know if you hire Aria what people are going to think." Goodloe asked Crouch to explain this statement, asking "Are you saying that I was hiring her because she was black?" Crouch confirmed that this is what she meant.

Both Cedar Lake and Brewer present cases in support of their arguments, but the facts of this case are most similar to those in *Johnson*, 319 F.3d 858. The *Johnson* court found no direct evidence of discrimination where, along with various derogatory comments about the plaintiff, the supervisor made a "comment expressing concern about the potentially detrimental effect on business of having an African-American co[-]manager." *Id.* at 865. The *Johnson* court explained:

> The concern that Johnson's presence would adversely effect the Wheelersburg store's business, for example, does not compel the conclusion that Newman sought to have Johnson removed from the position of co[-]manager. Deriving this purported desire from Newman's comment requires the inferential step of concluding that because Newman held this belief, he would want to have Johnson's employment terminated.

*Id.*

As in *Johnson*, various inferential steps are necessary in order to construe Crouch's statements as evidence that race was a motivating factor in offering the position to Sharp instead of Brewer. While the exchange between Goodloe and Crouch is certainly capable of being interpreted to mean that Crouch did not want to hire Brewer because she was African-American, or because of what others would think if an African-American was hired, it does not necessarily "*compel* the conclusion that [the] decision to [not to hire Brewer] was motivated by racial animus." *Id.* at 865 (emphasis added). In order to so construe the exchange, the trier of fact must infer that Crouch specifically did not hire Brewer because she was African-American. Indeed, Crouch's expressed

10

concern does not even necessarily compel the conclusion that she sanctioned the purported view of others that Brewer was hired because of her race. "The need to draw such inferences prevents these remarks from constituting direct evidence of discrimination." *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (holding that a statement of fact relating to the plaintiff's age was not direct evidence of age discrimination, because the relevance of the comment "is provided by inference")). We thus find that Crouch's comments, which *could* be construed as an improper racial concern and which *could* be construed as a motivating factor in Crouch's decision, do not constitute direct evidence of discrimination.

**IV.**

In order to prove discrimination through circumstantial evidence, a plaintiff must utilize the burden-shifting analysis set forth in *McDonnell Douglas*, 411 U.S. 792, as refined by *Texas Dept. of Cmty Affairs v. Burdine,* 450 U.S. 248, 256 (1981). Under this analysis, a plaintiff must first present evidence sufficient to prove a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 253-54. If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. *Id.* at 254. If the defendant provides a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for discrimination. *Id.* at 256.

In analyzing whether Brewer could prove a *prima facie* case, the district court applied the following standard, derived from *Farmer v. Cleveland Public Power*, 295 F.3d 593 (6th Cir. 2002):

11

> A *prima facie* case of discrimination based upon a failure to promote requires the plaintiff to prove that (1) she was a member of a protected group, (2) she applied for and was qualified for the desired position, (3) she was considered for and denied the promotion, and (4) the position remained open after her rejection or went to a less-qualified applicant who was not a member of the protected group.

*Id.* at 603 (citing *Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001)). The district court recognized that this standard, specifically the fourth prong of this standard, was at odds with other Sixth Circuit authority because in *White v. Columbus Metro. Housing Auth.,* 429 F.3d 232 (6th Cir. 2005), a panel of the Sixth Circuit found that to satisfy the fourth prong a plaintiff must prove is that "an individual of similar qualifications [as opposed to less qualifications] who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *Id.* at 240 (citing *Nguyen*, 229 F.3d at 562-63). The district court rejected *White*'s articulation of the fourth prong, finding that *White*, decided in 2005, could not overrule *Farmer*, decided in 2002, or *Roh*, decided in 2001. 6 Cir. R. 206(c) ("[N]o subsequent panel overrules a published opinion of a previous panel."); *see also Habich v. City of Dearborn*, 331 F.3d 524, 530 n. 2 (6th Cir. 2003) ("When an opinion of this court conflicts with an earlier precedent, we are bound by the earliest case.") (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001)).

In so doing, the district court identified the correct procedural rule. Unfortunately, the rule was not applied correctly. *White* did not attempt improperly to overrule *Farmer* and *Roh*, but merely recognized that *Farmer* and *Roh* could not, and did not, overrule *Nguyen*, decided in 2000. *White*, 429 F.3d at 241 ("[T]he test employed in *Farmer* and *Roh* deviates from prior precedent and therefore should not be used."). The correct standard was articulated in *Nguyen* and reaffirmed in

*White*:

> In order to establish a *prima facie* case of racial discrimination based upon a failure to promote, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion; and (4) other employees of *similar qualifications* who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

*Nguyen,* 229 F.3d at 562-63 (emphasis added); *see also White*, 429 F.3d at 240. Reliance on the *Farmer* and *Roh* standard was misplaced.[4]

**V.**

The parties do not dispute that Brewer can satisfy the first three prongs of her *prima facie* test.[5] Rather, the parties disagree as to whether she can satisfy the fourth prong, that "an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White,* 429 F.3d at 240.

We find that Brewer has identified sufficient evidence, at least, to create a triable question

---

[4]We recognize that the district court subsequently held that Brewer could meet neither the *Farmer/Roh* test or the *White* test.

[5]"In order to establish violation of the Kentucky Civil Rights Act, a plaintiff must prove the same elements as required for a *prima facie* case of discrimination under Title VII." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1250 (6th Cir. 1995) (citing *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984)). Thus, Brewer's state law claim rises or falls with her Title VII claim.

of fact that she and Sharp were similarly qualified.[6]  The district court found, and Cedar Lake

argues, that Brewer and Sharp were not "similarly qualified" because Sharp had more experience

and seniority than Brewer and because Sharp's experience was of a different nature than

Brewer's.  Cedar Lake argues that Sharp had worked at Cedar Lake for three years, while Brewer

had worked there only eighteen months.  Further, Sharp had experience as a behavior technician

while, at that time, Brewer did not.[7]

Upon our review of the evidence in the light most favorable to Brewer, we cannot agree

with the district court's conclusion; we find that Brewer has identified sufficient evidence that

she and Sharp were "similarly qualified" for the Adult Program Aide position.  Goodloe and

Sallee, the two people most directly involved in the interviewing process, as well as the

formulating of the details of the Adult Program Aide position, discussed the candidates and

concluded that Brewer was their top choice.  Goodloe thought that Brewer was the best candidate

for the job because she was very confident, held herself well and worked well with each client.

---

[6]We reject Brewer's argument that it is improper to consider Cedar Lake's proffered reasons for hiring Sharp during the *prima facie* stage of the *McDonnell Douglas* burden-shifting analysis.  While it is improper to consider an employer's proffered reasons for its employment decision in connection with the second prong of the *prima facie* analysis, the court is not precluded from "examining the qualifications of both [Sharp] and [Brewer] in determining whether [Brewer] has satisfied the fourth prong of her *prima facie* case." *White,* 429 F.3d at 242.

[7]A behavior technician typically receives additional training in dealing with client's behavioral problems.  When Sharp accepted the position as Adult Program Aide, the behavior technician position she vacated was offered to, and accepted by, Brewer.  Brewer, however, did not receive any additional training when she moved from a habilitation aide to a behavior technician.

Squires's notes indicate that Crouch, Goodloe and he had agreed that Sharp and Brewer were "equally qualified," but that Sharp was hired because of her seniority. While Sharp had more seniority and experience as a behavior technician, a jury could conclude that these factors did not distinguish Sharp given that Sharp had only eighteen months seniority over Brewer and Brewer did not need additional training to become a behavior technician. Further, a jury could also find that these considerations were offset by Sharp's schedule which did not permit her to work during the posted hours of the Adult Program Aide[8] and the observation that Sharp did not work as well with the clients.

Under these facts, we find that Brewer has presented a *prima facie* case of discrimination.

## VI.

After a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant satisfies that burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). Here, Cedar Lake has offered a legitimate reason for hiring Sharp; Sharp had more seniority and experience than Brewer. Thus, the burden shifts back to Brewer to produce sufficient evidence

---

[8]This last fact is particularly relevant because Goodloe and Sallee wanted someone on a daily basis, so that the clients could become familiar with the aide and the aide could become familiar with the clients.

that Cedar Lake's proffered business reason was pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002)).

We find that Brewer has produced sufficient evidence on which a reasonable jury could find by a preponderance of the evidence that Cedar Lake's proffered reasons were pretextual. Brewer has produced evidence supporting the conclusion that the subject of race was improperly introduced into the selection process and used as a consideration in Crouch's hiring decision. A jury could find that Crouch was thus motivated by Brewer's race, rather than Sharp's seniority or experience, particularly when the job posting did not state a preference for candidates with more seniority or behavior technician experience. Further, a jury could find that Sharp's marginal seniority over Brewer and experience as a behavior technician were insufficient to warrant her selection over Brewer, given Goodloe and Sallee's strong preference for Brewer and Sharp's lack of availability on Tuesdays and Wednesdays during the posted hours of the Adult Program Aide. Cedar Lake offers various reasons why Sharp's seniority and experience were sufficient to outweigh Brewer's merits, but Cedar Lake's arguments are essentially an invitation to engage in the fact-finding function of a jury. We decline this invitation, and limit our analysis solely to whether Brewer has produced sufficient evidence to establish a triable issue on pretext. She has. In light of Crouch's statements, Goodloe's testimony, and Sharp's limited availability, this case

must proceed toward a jury determination.

## VII.

For the reasons provided above, we vacate the district court's grant of summary judgment

to Cedar Lake and remand for further proceedings.