# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2016

Lyle W. Cayce
Clerk

No. 15-10647

WILLIAM FRANCIS CAMPBELL,

Plaintiff–Appellant,

v.

ZAYO GROUP, L.L.C.,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-2192

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Plaintiff–Appellant William Campbell appeals the district court's grant
of summary judgment in favor of Zayo Group, L.L.C. ("Zayo") on his age
discrimination claim. Because Campbell failed to raise a genuine dispute of
material fact as to whether Zayo's stated nondiscriminatory reason for
terminating him was pretextual, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-10647

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, 61–year old Campbell was hired as a Sales Manager for AboveNet, a fiber optic network and technology company covering North Texas and Colorado. Three months later, Zayo acquired AboveNet. After the acquisition, Zayo named Campbell Director of Texas Sales and assigned him managerial duties over the entire state of Texas. Campbell's duties at Zayo were largely the same as those he had at AboveNet.

In January 2013, Zayo reorganized its corporate structure and consolidated its Strategic Alliances and Sales departments. As a result, Zayo transferred Steven Williams from his original role as Vice President of Strategic Alliances to Vice President of Sales for Zayo's central region. On January 2, Campbell was informed that he would begin reporting to Williams. Williams, in turn, reported to Zayo's President of Sales, David Howson, who was responsible for "approv[ing] the head count associated with hiring and approval of any . . . form of dismissals." According to Zayo, as part of the reorganization, Williams planned to consolidate the Director of Texas Sales position and the Director of Strategic Alliances position. The Director of Strategic Alliances position was then held by 41-year-old Lawrence Vega. The new consolidated position would include both new responsibilities and an expanded geographic scope.

On January 9, shortly after Williams became Campbell's supervisor, Williams emailed Sandi Mays, Zayo's Chief of Staff, and sought approval to terminate Campbell in connection with the reorganization (the "January 9 Email"). Therein, Williams wrote: "We are recommending a consolidation of staff in the Dallas, TX market. We are eliminating the position that Lawrence Vega currently holds, Director, Strategic Alliances and recommend moving Lawrence into the Sales Director role." In his email, Williams identified Campbell and Vega as the incumbents in the positions. He stated that he

2

selected Vega for retention over Campbell because Vega had been hired in March 2012 and thus had seniority over Campbell. Williams also noted that Vega "has equal or superior skills for the role."

Zayo has an established procedure for performing a reduction in force ("RIF"), which provides:

> Based on the following criteria, an employee's position is selected for elimination. [Select in the following order]
>
> 1. Only Incumbent in eliminated position
> 2. Seniority (less than other Incumbents)
> 3. Job performance (only if performance is documented and has been communicated to the impacted person)
> 4. Qualifications (provide specific qualifications necessary to complete the job that other Incumbents have, that others don't)
> 5. Geographic mobility (you offered the position to the employee, and they declined to move).

Campbell contends that Williams eliminated Vega's position, and not his, and a straightforward application of Zayo's RIF policy should have resulted in Vega's termination, as he was the only incumbent in the eliminated position.

After filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue letter, Campbell sued Zayo in federal district court, alleging that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). Zayo filed a motion for summary judgment, which the district court granted. The court found that though Campbell made out a prima facie case of age discrimination, he failed to create a genuine factual dispute as to whether Zayo's legitimate nondiscriminatory reason for his termination—the application of a RIF policy that resulted in the retention of the more senior employee—was pretextual. Thus, the district court concluded that no rational jury could find that Campbell's age was the but-for cause of his termination.

3

No. 15-10647

Campbell now appeals, asserting that (1) the January 9 Email demonstrates that Zayo did not follow its RIF policy; (2) Zayo's reliance on a twenty-one day difference in seniority is "too sheer to be credible"; (3) Campbell was clearly better qualified for the position and Vega was not qualified; (4) Williams's reference to Vega having "superior or equal skills" is "false or suspicious"; and (5) Zayo made material misrepresentations to the EEOC.

## II. DISCUSSION

We review a grant of summary judgment de novo. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). "Summary judgment is proper if the pleadings and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). Though we draw all reasonable inferences in favor of the non-movant, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner*, 476 F.3d at 343 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

The ADEA prohibits an employer from discharging an employee on account of that employee's age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Because it is unlikely that there will be direct evidence of an employer's thought process, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000), ADEA claims typically rely on circumstantial evidence evaluated under the burden-shifting framework outlined in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973), *see Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). Under *McDonnell Douglas*, a plaintiff must first

4

establish a prima facie case of age discrimination; if the plaintiff does so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Goudeau*, 793 F.3d at 474.

"When the defendant employer comes forward with evidence of a legitimate, non-discriminatory reason for an adverse employment action, the presumption of discrimination raised by the plaintiff's prima facie case drops out and the plaintiff may attempt to prove discrimination by offering evidence that the employer's stated reason is pretextual." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). "Under the ADEA, the employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Goudeau*, 793 F.3d at 474 (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015)). "The ADEA thus requires a showing of 'but-for' causation." *Id.* at 475.

The district court found that Campbell made out a prima facie case of age discrimination. The court also concluded that Zayo provided a legitimate, nondiscriminatory reason for its employment decision—that Campbell's position was eliminated as part of a staff consolidation, and the application of Zayo's RIF policy required it to retain the employee with greater seniority. Neither party challenges these conclusions on appeal. Thus, Campbell must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Laxton*, 333 F.3d at 579). "'An explanation is false or unworthy of credence,' and thus pretextual, 'if it is not the real reason for the adverse employment action.'" *Id.*

No. 15-10647

(quoting *Laxton*, 333 F.3d at 578). At the pretext stage, the issue is "whether [the employer's] reason, even if incorrect, was the real reason for [the plaintiff's] termination." *Goudeau*, 793 F.3d at 476 (alterations in original) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

Campbell first argues that Zayo's stated reason for his termination—the neutral application of its RIF policy resulting in the retention of the more senior employee—is false. In support of this proposition, Campbell points to the January 9 Email, which he argues "explicitly and unambiguously states that Vega's position is being eliminated." Under Zayo's RIF policy, the only incumbent in the eliminated position is to be terminated before Zayo considers seniority. Thus, according to Campbell, the RIF should have resulted in Vega's firing because he was the only incumbent in the eliminated position.

In response, Zayo contends that it consolidated Campbell's and Vega's roles together and considered both of them as incumbents for the new position. Zayo presented evidence that, in his new role, Vega retained some of the duties that he had as Director of Strategic Alliances, plus the duties of a sales director. He was also assigned an expanded territory. Further, Zayo presented evidence that it assigned some of the duties that Campbell had performed as a sales director to other employees. Campbell does not dispute these underlying facts but instead (1) argues that the January 9 Email contradicts this stated reason and (2) describes this explanation as Zayo's post-hoc justification.

Campbell's primary argument is that the January 9 Email, which stated that Zayo was "eliminating the position that Lawrence Vega currently holds, Director, Strategic Alliances and recommend[ed] moving Lawrence into the Sales Director role" contradicts Zayo's explanation. However, the January 9 Email also states that "[w]e are recommending a consolidation of staff in the Dallas, TX market." As previously explained, Campbell has failed to rebut Zayo's evidence that Vega was assigned to this consolidated position. Instead,

Campbell argues that, viewed in the light most favorable to him, the tense of the January 9 Email creates an inference of pretext. According to Campbell, the January 9 Email presents the elimination of Vega's job "as a done deal" but shows that the consolidation of staff and reorganization were future events that had yet to occur. However, Campbell's suggestion that a consolidation had not yet begun is contradicted by the record: For example, Zayo presented evidence that the staff consolidation had already resulted in Williams being assigned to a managerial role over Campbell. Campbell does not rebut this evidence. Nor does Howson's testimony create a genuine factual dispute on this issue. Though Howson agreed with the January 9 Email's statement that the Director of Strategic Alliances position was being eliminated, he testified that Zayo was consolidating Campbell's and Vega's positions as part of a reorganization and proceeding with just one consolidated position. Again, Zayo provided evidence—which Campbell does not dispute—that Vega indeed assumed this blended role.

Relying on *Burton*, Campbell also asserts that Zayo cannot rely on evidence of the consolidated Sales Director job because these reasons "postdated the actual termination decision for Campbell." This reliance is misplaced. In *Burton*, we explained that "a purported reason for a decision that postdates the actual decision is necessarily illegitimate." 798 F.3d at 238. As a matter of common sense, this is true because "[t]he employer could not have been motivated by knowledge it did not have." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004); *see also Burton*, 798 F.3d at 238. *Burton* illustrates this difference: there, the employer sought to rely on alleged incidents of the employee's poor performance that occurred after it made its termination decision. 798 F.3d at 238. These "purported 'reasons' for [the employee's] termination postdat[ed] the decision to terminate her" and thus gave rise to an

inference of pretext. *Id.* at 239. Campbell, however, presents no similar evidence.

Nor has Campbell created a genuine factual dispute as to whether Zayo's application of the RIF policy was not the real reason for his termination. Zayo presented evidence that (1) it had already begun to consolidate staff; (2) Williams viewed Vega and Campbell as incumbents for the same position; and (3) it created a consolidated position with duties blended from both Vega's and Campbell's former roles. Campbell does not contradict this evidence and provides no evidence suggesting dishonesty in Williams's belief that Campbell and Vega were both incumbents. Instead, he simply suggests that Vega should have properly been viewed as the only incumbent.[1] But this mere disagreement with Williams's application of the RIF policy, without more, does not provide substantial evidence of pretext. As we have previously explained, "[t]he ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)). Therefore, Campbell has failed to create a genuine dispute of material fact as to the falsity of Zayo's explanation for his termination.

Campbell also argues that even if Zayo actually applied its RIF policy, its reliance on seniority in applying the policy is "too sheer to be credible" because the difference in seniority between Vega and Campbell was just twenty-one days.[2] Campbell does not dispute, however, that Zayo's RIF policy

---

[1] Campbell argues that Zayo previously failed to follow its RIF policy when it hired 61-year-old Campbell over a younger employee, 53-year-old Russell Smith, who also worked at AboveNet. There is no evidence in the record, however, that Zayo's RIF process would have applied to an initial hiring decision made when Zayo acquired AboveNet.

[2] Campbell argues that this court has held that a reason for a termination "(albeit true) can simply be too 'sheer.'" In support of this argument, Campbell cites our decision in *Thibodeaux-Woody v. Houston Community College*, 593 F. App'x 280 (5th Cir. 2014), but that

lists seniority as the second criterion to be considered and that Vega was the more senior employee. "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions . . . ." *Moss*, 610 F.3d at 926 (quoting *Bienkowski*, 851 F.2d at 1507–08). Though Campbell asserts that a twenty-one day difference in seniority is a distinction without a difference, "[s]imply disputing [the employer's] business judgment is not enough to prove pretext without producing evidence that the reasons stated were pretextual." *Goree v. Comm'n Lincoln Par. Det. Ctr.*, 437 F. App'x 329, 334 (5th Cir. 2011).

Nor do the cases Campbell cites lead to a different conclusion. In none of those cases did a court determine that an employer's true reason was simply too "unbelievable." Rather, in each situation, the employee undercut the employer's business judgment defense with some other evidence that the employer either considered impermissible factors in its employment decision or failed to uniformly apply a company policy. *See Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 920 (5th Cir. 2015) (noting evidence that other employees were not fired for committing the same violation); *Brewer v. Cedar Lake Lodge, Inc.*, 243 F. App'x 980, 989 (6th Cir. 2007) (finding a triable fact issue on pretext where there was evidence that race had been introduced into the hiring process and the job posting did not list seniority as a preference); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290–91 (7th Cir. 1999) (explaining that a jury could find employer's stated reason pretextual where

---

case had nothing to do with the ADEA or pretext analysis and is otherwise distinguishable. There, we cited *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991), which recognized that where a party moves for summary judgment on the basis of an affirmative defense (for which, of course, that party bears the burden of proof), the non-movant may defeat summary judgment by showing that the movant's evidence "is so sheer that it may not persuade a reasonable fact-finder to return a verdict" in the movant's favor. *Id.* at 1265. But here, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, at 256 (1981)).

the conduct violating the company code of conduct was distinguishable from the conduct of other employee's punished under the same provision). Since Campbell has not produced sufficient evidence that Zayo's reliance on its RIF procedure was pretextual, his argument is simply an impermissible challenge to the wisdom of Zayo's RIF policy.

Campbell next contends that his firing was pretextual because (1) he was clearly better qualified than Vega for the new position and (2) Vega was not qualified for the position. "[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). We have recognized that, in some situations, "[a] fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995).

At the pretext stage of the summary judgment analysis, however, the key inquiry is whether the plaintiff has created a genuine dispute as to whether "the legitimate reasons offered by the defendant were not its true reasons." *Squyres*, 782 F.3d at 231 (quoting *Reeves*, 530 U.S. at 143); *see also Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 318–19 (5th Cir. 2015) (concluding that evidence of the plaintiff's superior qualifications cast doubt on employer's "proffered hiring rationale—*i.e.*, that the younger successful applicants were selected because they were all better qualified than her"); *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 882 (5th Cir. 2003) ("In order to demonstrate that [the employer's] asserted justification (that [selected employees] were more qualified) was pretext, [the plaintiff] can attempt to show that he was 'clearly better qualified' for the . . . position." (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2003))).

Here, Zayo's explanation for Vega's retention over Campbell was not based on their relative qualifications or performance; instead, Zayo's reason is

that because Campbell and Vega were both considered to be incumbents, its RIF policy required the retention of the more senior employee. Even assuming Campbell presented sufficient evidence that he was clearly better qualified or that Vega was not qualified for the position, such evidence would not show in this case, as is relevant to pretext, that Zayo's stated nondiscriminatory reason "is not the real reason for the adverse employment action."[3] *Burton*, 798 F.3d at 233 (quoting *Laxton*, 333 F.3d at 578); *see also Julian v. City of Houston*, 618 F. App'x 211, 215 (5th Cir. 2015) (observing that employee's evidence does not "demonstrate pretext [where] it does not serve to cast any doubt on the legitimate, nondiscriminatory reason the [employer] has proffered for its decision"). The ADEA does not require an employer "to make proper decisions, only nondiscriminatory ones." *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

Campbell next asserts that the reference to Vega's "superior or equal skills" in the January 9 Email is false or suspicious and thus shows pretext. We disagree. The January 9 Email does not reference performance as being relevant to the RIF decision. And even assuming performance was a consideration, Campbell presents no evidence that Williams's statement was otherwise pretext. His argument that this statement is "clearly false" and "sounds like Williams trying to build a case for what he knows is wrong" is based only on conclusory assertions and his subjective belief, neither of which are sufficient to withstand summary judgment. *See Davis*, 765 F.3d at 484.

Finally, Campbell contends that Zayo made misleading statements to the EEOC. "A jury may view 'erroneous statements in [an] EEOC position statement' as 'circumstantial evidence of discrimination.'" *Burton*, 798 F.3d at

---

[3] We need not conclude, as the district court did, that Campbell failed to create a genuine dispute as to whether he was clearly better qualified than Vega. We may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court. *See Moss*, 610 F.3d at 928.

237 (alteration in original) (quoting *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013)). But Campbell has not produced evidence that would allow a reasonable jury to conclude that Zayo made such misleading statements; Campbell's entire argument is based on his strained interpretation of the January 9 Email, which, as we have explained, is insufficient to create a genuine dispute as to pretext.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Campbell, he failed to raise a genuine dispute as to whether Zayo's stated reason for his termination was merely a pretext for age discrimination. Because no rational jury could conclude that Zayo's explanation for Campbell's termination was false or that Campbell's age was the but-for cause of his termination, the district court's grant of summary judgment is AFFIRMED.