United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-21061
Summary Calendar

_____

LANA SANDERS; BARBARA TURNER,

Plaintiffs - Appellants,

versus

ANADARKO PETROLEUM CORP.; ET AL.,

Defendants,

ANADARKO PETROLEUM CORP.; PHILLIPS PETROLEUM CO.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
District Court Cause No. H-02-CV-423

_____

Before HIGGINBOTHAM, DAVIS, and PRADO, Circuit Judges.[1]

EDWARD C. PRADO, Circuit Judge.

In this appeal, plaintiffs-appellants Lana Sanders and

Barbara Turner challenge the dismissal of their employment

discrimination claims against defendants-appellees Anadarko

Petroleum Corporation (Anadarko) and Phillips Petroleum Company

(Phillips). After considering the appellants' arguments, this

_____

[1]Pursuant to 5TH CIRCUIT RULE 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

court reverses the district court's order dismissing Turner's Title VII claim and affirms the district court in all other respects.

**Background for the Lawsuit**

The appellants were longtime employees of Phillips. During the time period of the appellants' allegations, the appellants worked for Phillips as operators on the Mahogany, an oil production platform located off the shore of Louisiana. The Mahogany is jointly owned by Phillips, Anadarko, and a non-party. In June 2000, Anadarko purchased the controlling interest in the Mahogany. At that time, two eight-person crews operated the Mahogany. Each crew was comprised of seven men and one woman.

After gaining control of the Mahogany, Anadarko accepted applications from the sixteen members of the Phillips crew who operated the Mahogany. Anadarko hired the fourteen male crew members, but did not hire Sanders and Turner, the only females who worked on the Mahogany.

In response, Sanders and Turner sued Anadarko and Phillips for various claims under Title VII, the Texas Commission on Human Rights Act (THCRA), and the Age Discrimination Employment Act (ADEA). The district court referred the appellants' lawsuit to the magistrate judge. After considering motions for summary judgment from Anadarko and Phillips, the magistrate judge recommended dismissing all the appellants' claims except for

Turner's Title VII claim. The district court adopted the magistrate judge's recommendation.

Anadarko then moved for reconsideration and asked the district court to dismiss Turner's remaining claim. After reviewing the record, the district court dismissed Turner's last claim. On appeal, the appellants challenge the dismissal of Turner's Title VII claim against Anadarko and the dismissal of Sanders's gender discrimination and retaliation claims against Phillips.

## Turner's Gender Discrimination Claim

Turner alleges that Anadarko failed to hire her to work as an operator on the Mahogany because she is female. Anadarko, however, contends that Turner is not qualified to work as an operator on the Mahogany. Anadarko maintains that a person qualified to work on the Mahogany must have a strong background in one of six fields of expertise. Anadarko also maintains that its operators must have the ability to perform all oil-platform tasks, including crane operation. Anadarko claims that Turner does not meet its qualifications.

In its motion for summary judgment and its motion for reconsideration, Anadarko argued that Turner failed to establish a prima facie case of gender discrimination under Title VII because she does not meet its requirements for working on the Mahogany. The district court agreed, reasoning that Turner

3

failed to present evidence to show that Anadarko's stated qualifications are not requirements for working on the Mahogany or that the men who were hired failed to satisfy Anadarko's qualifications. In her first issue, Turner contends the district court erred by finding that she failed to establish a prima facie case for her failure to hire claim against Anadarko.

We review the district court's grant of summary judgment de novo, applying the same process used by the district court.[2] "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[3]

Prima Facie Case. In an employment discrimination case, the plaintiff bears the initial burden of first establishing a prima facie case of unlawful discrimination.[4] To meet this burden, the plaintiff must show: (1) she is a member of a protected class, (2) she was qualified to do the job, (3) she suffered an adverse employment action, and (4) others outside the protected group

---

[2]*See* FED. R. CIV. P. 56(c); *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).

[3]*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912 (5th Cir. 1992)(quoting FED. R. CIV. P. 56(c)).

[4]*See Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 142 (2000).

4

were treated more favorably than she was.[5]  The plaintiff's burden of establishing a prima facie case is "not onerous."[6]  "To establish a prima facie case, a plaintiff need only make a very minimal showing."[7]

In the instant case, Turner presented evidence that shows that Andarko hired all of the males who worked on the Mahogany, but that Anadarko did not hire the only two women who worked on the Mahogany.  Turner also presented evidence that she worked for Phillips for nineteen years – including fourteen years on oil platforms and four years on the Mahogany – and that she received high performance evaluations during the time she worked on the Mahogany.  In addition, Turner presented evidence that she is certified to operate the Mahogany's crane.  Turner's satisfactory job performance as an operator on the Mahogany for four years and her nineteen years of experience as an employee of Phillips provides evidence that she met the minimum qualifications for working as an operator on the Mahogany.  Turner's evidence satisfies her burden to make a prima facie case of unlawful discrimination.  The district court erred by requiring Turner to present evidence that Anadarko's stated qualifications were not

---

[5]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[6]*See Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).

[7]*Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (citations omitted).

required for working on the Mahogany or that the men who were hired failed to satisfy Anadarko's qualifications.[8]

Pretext. "Establishing the prima facie case raises an inference of unlawful discrimination, and the burden of production then shifts to the defendant-employer to proffer a legitimate, nondiscriminatory reason for the challenged employment action."[9] If the defendant-employer meets this burden, the plaintiff must then produce evidence to demonstrate that the employer's presumably nondiscriminatory reason for not hiring her was a pretext for intentional discrimination.[10] "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'"[11]

The district court found that Turner failed to raise a

---

[8]*See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356 (5th Cir. 2001) (holding that district court erred by requiring plaintiffs to show that they were better qualified than employees who were promoted in order to make a prima facie case).

[9]*Blow v. City of San Antonio,* 236 F.3d 293, 296-97 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).

[10]*See McDonnell Douglas*, 411 U.S. at 804.

[11]*Price v. Fed. Exp. Corp*., 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 148-49 (2000).

question of fact about whether Anadarko's reason for not hiring her was a pretext for gender discrimination. The district court reasoned that Turner failed "to present evidence demonstrating that she was clearly better qualified . . . than the men who received the employment offers." In her next issue, Turner argues that the district court erred by requiring her to show that she was clearly better qualified for the position she sought with Anadarko.

A plaintiff may raise a fact question about pretext by presenting evidence that she is "clearly better qualified" than the employee selected for the position in dispute.[12] To raise a fact question about whether she is clearly better qualified, the plaintiff must show that "disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face."[13] Pointing to clearly superior qualifications is one way to demonstrate intentional discrimination, but it is not the only way.[14] A plaintiff may also establish pretext by presenting evidence that the employer's proffered explanation is false or unworthy of credence,[15] because "it is not the real reason for

---

[12]*See Celestine v. Petroleos de Venezuella SA*, 266 F.3d at 356-57.

[13]*Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).

[14]*See Julian v. City of Houston, Tex.*, 314 F.3d 721, 728 (5th Cir. 2002).

[15]*See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998).

7

the adverse employment action."[16]  If, however, a plaintiff relies on comparative qualifications alone, she must present evidence that she is clearly better qualified than those individuals who were hired.[17]

In its motion for summary judgment, Anadarko articulated two non-discriminatory reasons for not hiring Turner.  Anadarko asserted that it relied on the recommendations of Turner's supervisor, George Faulk, in determining who to hire and that Faulk did not recommend Turner.  Anadarko also asserted that it decided to hire the seven best qualified members of Turner's shift on the Mahogany and that the other seven members of Turner's crew were better qualified than Turner.

In making its case for summary judgment, Anadarko emphasized its decision to lower the Mahogany's operating costs by reducing the number of crew members.  Rather than operate the Mahogany with eight crew members per shift as Phillips had, Anadarko explained that it chose to operate the Mahogany with seven crew members per shift.  Anadarko maintained that operating the

---

[16]*Laxton*, 333 F.3d at 578.

[17]*See Rutherford v. Harris County, Tex*., 197 F.3d 173, 182 n.9 (5th Cir. 1999) (not requiring plaintiff to prove that she was clearly better qualified than males who were promoted because she did not attempt to prove pretext solely on the basis of her comparative qualifications); *E.E.O.C. v. Manville Sales Corp*., 27 F.3d 1089, 1096 n.5 (5th Cir. 1994) (explaining that showing he is clearly better qualified than those who were not terminated is one way a plaintiff can show that a reduction-in-force was a pretext for unlawful discrimination, a plaintiff may prevail without showing that he is clearly better qualified).

Mahogany with fewer people required each crew member to have a strong background in one of six areas: electrical,[18] pneumatic, mechanical, instrumentation, measurement and crane repair. Anadarko explained that each crew member worked as an operator. Anadarko maintained that an operator must also be able to operate a crane and meet certain medical and physical requirements, which include climbing ladders and stairs.[19]  Anadarko contends that the men who work on the Mahogany meet these requirements, but that the women do not.  As for Turner, Anadarko asserts that Turner cannot operate a crane because of problems with depth perception and she cannot climb stairs.  Anadarko also asserts Turner lacks a background in any of the six required areas of expertise.

In response to the motion for summary judgment, Turner maintained that: (1) Anadarko's explanation for not hiring her is false, (2) Anadarko's position that it sought to cut operating costs is not credible, (3) the men who work on the Anadarko are not more qualified than she is, and (4) she is qualified to work as an operator on the Mahogany.  To raise a fact question about Anadarko's reason for not hiring her, Turner first challenged

[18]At one point in its motion, Anadarko refers to "electronics."  Rather than a substantive difference, the reference appears to be a typo.

[19]The job requirements Anadarko distributed to the Mahogany's crew does not indicate that a background in one of the six areas or crane operation is required for an operator's job.

Anadarko's hiring process.  Turner presented evidence that showed that even though Anadarko insists that its operators must possess certain qualifications, the person who made the hiring decisions never ascertained whether the applicants actually met Anadarko's requirements.  Specifically, Anadarko employee Tommy Ward testified during his deposition that he made the hiring decisions for the Mahogany, and that he made his decisions based on his review of the crew members' applications and recommendations from the crew members' supervisors.  Ward admitted, however, that he never actually interviewed the applicants or conducted an independent investigation into the abilities of the Mahogany's crew members.  This evidence raises a fact question about the legitimacy of Anadarko's position about its requirements for operators for the Mahogany and about why Anadarko did not hire Turner.

To show that Anadarko's position about cutting operating costs is not credible, Turner relied on Ward's deposition testimony.  Ward's testimony clearly indicates that he did not act on specific instructions to reduce the number of crew members who worked on the Mahogany.  Instead of specific instructions, Ward testified that he reduced the number of crew members as part of a general company policy of operating the Mahogany as cost-efficiently as possible.  Although this evidence does not prove that reducing the crew was pretext for gender discrimination, it is nevertheless probative of whether the decision to reduce

10

personnel was motivated by unlawful animus towards women. Considering that Anadarko did not hire either of the women who worked on the Mahogany, but hired all of the men, a reasonable jury could conclude that Ward's explanation for reducing the number of crew members was not the real reason for reducing the crew.

Turner also presented evidence to show the falsity of Anadarko's position that the men who work on the Mahogany are better qualified than she is.[20]  In part, Turner relied on her deposition testimony that she is better qualified than two male roustabouts who were hired, Scotty Hazelton and Rod Phillips. Turner explained that Hazelton was not able to bring the platform up without her or the other operator directing him.  She also explained that Rod Phillips did not pay as much attention as she did to what occurred on the platform and that Phillips did not understand the flow of the platform to the degree that she did. Performance evaluations prepared by shift supervisor George Faulk indicate that Turner received higher performance ratings than Hazelton and Phillips during the time period they worked together

---

[20]If Turner relied on comparative qualifications alone to show pretext, she would have to raise a fact question about whether she is "clearly better qualified" than the men Anadarko hired to survive summary judgment. But because she relies on more than comparative qualifications, Turner must raise a fact question about whether the men on her crew are "better qualified" because one of Anadarko's non-discriminatory reasons for not hiring Turner is that the other seven members of Turner's crew are better qualified than Turner.

on the Mahogany.  Notably, it was Faulk who purportedly provided the adverse recommendation about Turner.  Turner's evidence about the abilities of Hazelton and Phillips raised a question of fact about whether the men Anadarko hired are actually better qualified than she is.  The disparity between Faulk's performance ratings of Turner and what Faulk purportedly reported to Ward – that he did not recommend Turner – raises a question about the truth of Anadarko's explanation for why it did not hire Turner.

The training records Turner presented also raise a question about whether the men who work on the Mahogany are more qualified than the women.  Ward testified that unlike Phillips, which classified crew members by specific job titles, Anadarko required all crew members to work as operators.  Logically, a person with operator experience is more qualified to work as an operator on the Mahogany than a person without operator experience.  Yet, Hazelton's training record reflects less than one year of experience as an operator and fifteen years experience as a roustabout.  A roustabout, unlike an operator, is an unskilled, general laborer, lacking specialization.[21]  Similarly, Rod

---

[21]*See Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 393 (5th Cir. 2003) (referring to roustabout as a general laborer on a jack up drilling or workover rig); *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1239-40 (5th Cir. 1994) (describing roustabout as a position involving unskilled labor); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 293 (5th Cir. 1987) (characterizing roustabout as a general laborer); *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 923 (5th Cir. 1982) (stating that the roustabout was the rig's lowest rung on the employment ladder).

Phillips's training record reflects eleven years experience as a roustabout and no experience as an operator. The training records of Patrick Melancon — a crew member on Sanders's shift – reflects eleven years experience as a roustabout and no experience as an operator.[22] Jerome Scroggins's record indicates he had five years experience as an operator.

In contrast, Turner's training record reflects nine years experience as an operator, following ten years as a roustabout. Sanders's training record reflects nine years experience as an operator, after working as a roustabout for ten years. The disparities in the experience levels of Hazelton, Rod Phillips, Melancon, and Scroggins, as compared to those of Turner and Sanders, raise a fact question about whether the men are better qualified than the women and about the credibility of Anadarko's explanation for its hiring decisions. After considering this evidence, a reasonable jury could conclude that Anadarko's position – that the other seven members of Turner's crew were better qualified than Turner – is a pretext for unlawful discrimination. Even though Turner does not rely on comparative qualifications alone, this evidence also raises a question of fact about whether Turner is clearly better qualified than the men who Anadarko hired. A reasonable jury could conclude that

---

[22]Greg Case, the supervisor for Sanders's shift on the Mahogany, indicated in his recommendations to Ward, "[d]on't let the title fool you."

Turner is clearly better qualified.

Finally, Turner also challenged the truth of Anadarko's position that she was not qualified to work as an operator because she lacked experience in one of the six areas, because she cannot operate a crane, and because she cannot climb stairs. To show the falsity of this position, Turner presented her testimony that one of her primary duties was reading the platform's instruments and recording the readings. This evidence raises a question about whether Turner was unqualified because it shows that Turner has a background in one of the six areas — specifically, instrumentation. As for the crane-operation requirement, Turner admitted during her deposition that she has problems with depth perception that make it unsafe for her to load or unload a boat, but explained that she is certified to operate a crane to move things on the deck of the platform. As for her ability to climb stairs, Turner attested that she passed Phillips's physical fitness exam four months before Andarko obtained control of the Mahogany, and testified in her deposition that she climbed ladders as part of her work on the Mahogany.

In determining that Turner did not raise a fact question about pretext, the district court focused on whether Turner *demonstrated* that she was clearly better qualified than the men Anadarko hired. Turner, however, was not required to make this showing for two reasons. First, Turner did not rely on

14

comparative qualifications alone. Turner also challenged the legitimacy of Anadarko's purported hiring criteria and its decision to reduce the Mahogany's crew, and presented evidence that raised fact questions about these matters. Second, even if Turner had relied on comparative qualifications alone, Turner is not required to demonstrate that she is clearly better qualified at the summary judgment stage. Instead, she is required to raise a question of fact about whether she is clearly better qualified. Here, a reasonable jury could conclude that Turner is clearly better qualified.

Considering Turner's nine years experience as an operator and her four years as an operator on the Mahogany, and the fact that Andarko did not hire either of the women who worked on the Mahogany, a reasonable jury could conclude that Anadarko's purported reason for not hiring Turner is a pretext for gender discrimination. The district court erred by requiring Turner to demonstrate that she is clearly better qualified than the men who were hired, rather than raise a genuine issue of material fact about whether Anadarko's reason for not hiring her is a pretext for unlawful discrimination.

### Sanders's Claim Under the TCHRA

In its motion for summary judgment, Phillips argued that Sanders lacked standing to pursue her claims under the TCHRA because Sanders did not live or work in Texas, nor was she

15

seeking employment in Texas.  After considering this argument, the magistrate judge recommended dismissing Sanders's TCHRA claims.  The magistrate judge reasoned that the plain language of the statute precludes a person employed, or seeking employment, outside of Texas from bringing a claim against her employer under the TCHRA.  The district court adopted the magistrate judge's recommendation and dismissed Sanders's claims under the TCHRA.  On appeal, Sanders challenges the dismissal of her claims against Phillips.

The TCHRA[23] was enacted to coordinate and conform with federal law under Title VII and the ADEA.[24]  The statute clearly indicates that it is intended to protect "persons in [Texas] . . . from discrimination in . . . employment."[25]  The statute explicitly precludes coverage of "an employer with respect to the employment of a person outside this state."[26]

In this case, it is undisputed that Sanders does not live, and did not work, in Texas.  Instead of working in Texas, Sanders worked on the Mahogany which is located 77 miles off the shore of Louisiana.  Sanders, however, contends the district court erred based on an affidavit she filed in response to Phillips's motion

---

[23]*See* TEX. LAB. CODE ANN. § 21.001-22.004 (Vernon Supp. 2004).

[24]*See Caballero v. Central Power and Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993).

[25]TEX. LAB. CODE ANN. § 21.001 (Vernon 1996).

[26]TEX. LAB. CODE ANN. §  21.111 (Vernon 1996).

16

for summary judgment.  In the affidavit, Sanders attested that she was discriminated against throughout her employment with Phillips – most of which she maintains occurred in Texas – and that she suffered retaliation when she complained about the discrimination.  Sanders further attested that at the time she was terminated from Phillips she had applied for a job in Texas. Sanders contends that the district court should have conducted an evidentiary hearing to resolve the disputes in the jurisdictional facts.

Where issues of disputed fact exist about a plaintiff's standing to pursue her claim, the district court is required to hold an evidentiary hearing before summarily dismissing the plaintiff's claim.[27]  But the district court does not err by not holding a hearing where the only relevant issues of fact are undisputed.[28]

In this case, Sanders filed her Charge of Discrimination against Phillips on January 12, 2001.  Only those acts that allegedly occurred within 180 days of that filing are actionable as a matter of law.[29]  Consequently, Sanders may only pursue

---

[27]*See Martin v. Morgan Drive Away, Inc*., 665 F.2d 598, 602 (5th Cir. 1982).

[28]*Id*.

[29]*See* TEX. LAB. CODE ANN. § 21.202 (Vernon 1996) (complaint under TCHRA must be filed no later than the 180 days after the date the alleged unlawful employment practice occurred or complaint shall be dismissed as untimely complaint).

17

claims based on acts that allegedly occurred on or after July 16, 2000. It is undisputed that Sanders worked on the Mahogany from September 1999 through July 2000. Thus, Sanders's only actionable complaints relate to her employment on the Mahogany, employment which was not within the state of Texas. Although Sanders maintains that she worked for Phillips in Texas for many years, that employment is outside of the time period she can complain about here.

In addition, this lawsuit is limited to the scope of the administrative investigation that could reasonably be expected to grow out of Sanders's initial charge.[30] In her charge, Sanders complained about not being hired by Anadarko.[31] Neither Sanders's charge nor the notes of the administrative investigator mention Phillips's alleged failure to hire Sanders. Thus, in this lawsuit, Sanders cannot pursue a claim based on Phillips's failure to hire her for another job. Consequently, the district court did not err by dismissing Sanders's claims under the TCHRA.

In her last argument, Sanders contends the district court erred by failing to conduct a conflict of laws analysis to determine whether Arkansas or Louisiana law applies to her

---

[30]*See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (Title VII cause of action is limited by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination).

[31]Likewise, the second amended complaint alleges that Anadarko, not Phillips, did not hire Sanders for the Mahogany.

claims.  Sanders maintains that if Arkansas law or Louisiana law applies, she should be permitted to amend her complaint to conform to applicable state law.  Sanders, however, never alleged a violation of either Arkansas law or Louisiana law.  As a result, the district court properly limited its consideration to Texas law – here, the TCHRA.

## Conclusion

Because the district court erred by dismissing Turner's Title VII claim, this court REVERSES that portion of the district court's judgment and REMANDS the case for further proceedings on that claim.  Because the district court did not err in dismissing Sanders's claims brought under the TCHRA, the court AFFIRMS the judgment in all other respects.

REVERSED and REMANDED in part; AFFIRMED in part.

19