# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60783

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2015

Lyle W. Cayce
Clerk

MARY ALICE STENNETT,

Plaintiff - Appellant

v.

TUPELO PUBLIC SCHOOL DISTRICT,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:12-CV-79

Before DAVIS, * DENNIS, and COSTA, Circuit Judges.

PER CURIAM: **

Mary Alice Stennett appeals from the district court's grant of summary judgment in favor of the Tupelo Public School District ("TPSD"), dismissing her claims of discrimination against TPSD for its refusal to hire her for seven different jobs because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* With respect to each job,

---

* Judge Davis is concurring in the judgment only.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60783

Stennett produced sufficient evidence to establish a *prima facie* case of age discrimination, which, together with other evidence that she submitted casting doubt upon TPSD's proffered reasons for not hiring her, was sufficient to support a reasonable jury's finding that TPSD discriminated against her on the basis of her age, thus rendering summary judgment inappropriate. The district court nevertheless erroneously granted summary judgment in favor of TPSD with respect to each alleged ADEA violation. In so doing, the district court engaged in some of the same errors that led to the Supreme Court reversing this Circuit's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Accordingly, we reverse the district court's summary judgment with respect to each alleged ADEA violation and remand the case for further proceedings consistent with *Reeves* and this opinion.

## I.

Stennett has worked as an educator for thirty-eight years and spent the twenty most recent of those years working for TPSD. She holds numerous degrees and certifications. For example, she possesses a Bachelor's in Secondary English and Social Studies from the University of Mississippi; a Master's of Education in Secondary Administration from the University of Southern Mississippi; a Master's of Education in Secondary English from the University of Mississippi; and a specialist degree in Secondary English from the University of Southern Mississippi. In addition, she holds the following teaching and administrative certifications from the State of Mississippi: Certified AA Secondary School Principal (7-12); Certified AA Administrator (K-12); Certified AAA Secondary English Teacher (7-12); and Certified AAA Gifted Teacher (K-12). Prior to her employment with TPSD, Stennett worked as a journalism and English teacher in Jackson; a district Secondary English Coordinator in Gulfport; a Senior Advanced Placement English teacher in

No. 13-60783

Gulfport; and an Adjunct English Instructor at the Jefferson Davis Junior College in Gulfport.

In 1990, Stennett first applied for positions with TPSD. Upon receiving her application, the assistant superintendent determined that, based on Stennett's prior experience, she would be a good candidate to help run the operations of what was the first alternative school in the district, the Bissell Alternative School, which served middle school and high school students who had disciplinary and attendance problems. Accordingly, Stennett was hired to be the "lead teacher" at the school. As "lead teacher," Stennett not only had English-teaching duties but also was responsible for running the daily operations of the school. For example, she supervised staff, oversaw student discipline, attended to emergencies, and handled other administrative matters. In other words, Stennett served as both a teacher and head administrator at Bissell. Stennett reported directly to the Assistant Superintendent and occasionally to the Superintendent. She worked in this capacity through 1997.

From 1998 to 2001, Stennett served as the school district's drug-education specialist, maintaining an office at Tupelo High School. In this capacity, Stennett was responsible for, among other things, overseeing the district's drug education curriculum and writing grants. At the same time, Stennett also worked as a liaison between the alternative school and the high school, wherein her duties included working with the high school's assistant principal to ensure that students had all their assignments and curriculum needs met.

In 2002, Stennett began working at the Fillmore Center, the successor to the Bissell Alternative School. Although her contract designated her position as "teacher," Stennett's position was more akin to "assistant principal." Accordingly, she maintained an office with the school's

administration and had a sign on her door reflecting that she served in the capacity of assistant principal or director. Further, Stennett's job duties were primarily administrative. She was responsible for disciplining students; hiring, supervising and evaluating staff; overseeing curriculum; assuming the duties of the school's principal in his absence; and coordinating on-site testing for all district and state tests. Consistent with these job duties, Fillmore Center staff overwhelmingly viewed Stennett as holding an assistant principal's position, and considered her to have authority over them. For example, the Fillmore Center's former special education teacher, Donna Jumper, explained that she was informed Stennett served as an "assistant principal" or "assistant administrator" of the school, and that school staff treated Stennett as though she served in that role. Indeed, Jumper testified that she would be "surprised" to learn that Stennett was not the assistant administrator at the school. Similarly, the Fillmore Center's former GED teacher, Bobbie Montgomery, testified that Stennett served as the Fillmore Center's assistant principal and, accordingly, was "second in command of the Fillmore Center." Likewise, the Fillmore Center's former secretary, June Childers (who was hired by Stennett), testified that Stennettt served as an assistant administrator and that the school's' administrative staff treated her as such. In addition, Stennett's job performance at the Fillmore Center was rated excellent, and both her supervisors and teachers held her in high esteem. She never had any disciplinary problems.

On May 26, 2010, TPSD informed Stennett and all other Fillmore Center staff via letter that the school district planned to "outsource" operations of the Fillmore Center to a private contractor due to financial issues. As a result, the letter explained, the contracts of all employees, including Stennett's, would not be renewed. At the time, Stennett was sixty-four years old and the oldest member of the Fillmore Center staff. At a meeting to discuss the outsourcing,

No. 13-60783

TPSD officials informed Fillmore Center staff that they could apply for available positions in the district. Thereafter, Stennett applied for three different positions for the 2010–2011 school year,[1] but did not receive any interviews for those positions. Ultimately, TPSD re-hired several Fillmore Center employees who were substantially younger than Stennett, but did not re-hire the four oldest employees, including Stennett, to work on a full-time basis. Stennett was the only member of the school's administrative team not to be re-hired by TPSD.

After only one year of "outsourcing," TPSD reclaimed control over operations of the Fillmore Center for the 2011–2012 school year apparently due to its dissatisfaction with the private contractor's services. Larry Harmon, who had been the Fillmore Center's former director, was re-hired as director of the alternative school—now called the "Structured Day Program." Despite its new name, the alternative school continued to serve the same type of students who attended when Stennett was employed there. However, Stennett's former position was not maintained. Stennett nevertheless was contacted by Harmon about an English-teaching position at the school for the 2011–2012 school year. Asked by Stennett if he was offering her the job, Harmon explained that she would need to interview for it. Although Stennett expressed her interest in obtaining her prior administrative position with the school, she did not decline the English-teaching job. Rather, Harmon explained that he would "get back with [her]" about an interview, yet Stennett never heard back from him. Stennett testified that she called Harmon "quite a few times" and even left a note for him. The position ultimately was filled, and Stennett was never interviewed.

---

[1] Two of the positions were media specialist jobs, which ultimately were filled by other candidates. The third job was an assistant testing coordinator position, which apparently was later eliminated.

No. 13-60783

In June 2011, Stennett, then 66 years old, applied for seven different available positions with TPSD:[2] (1) Tupelo Middle School Assistant Principal; (2) Lawndale Elementary Assistant Principal; (3) Lawhon Administrative Intern; (4) High School Advancement Academy Lead Teacher; (5) Tupelo High School Testing Coordinator; (6) Tupelo High School Assistant Principal; and (7) District Testing Coordinator at the Central Office. Stennett's applications for each of the seven positions were rejected, and TPSD filled each position with a person who was substantially younger than Stennett. Stennett was interviewed for only two of the seven positions.

On April 16, 2012, Stennett filed suit in the United States District Court for the Northern District of Mississippi alleging that TPSD violated the ADEA when it refused to hire her because of her age for each of the seven positions. After discovery, TPSD moved for summary judgment, contending that it rejected Stennett because she was less qualified than each person hired and not because of her age. Stennett opposed the motion, submitting evidence supporting her *prima facie* case of age discrimination and her contention that TPSD's alleged reasons for refusing to hire her were pretextual. The district court granted TPSD's motion for summary judgment, stating that Stennett failed to carry her burden of proving that she was "clearly better qualified" than the other applicants and that she therefore "failed to meet her burden of establishing a genuine issue of material fact as to whether Defendant's proffered reason for failing to hire her is merely pretext." *Stennett v. Tupelo Pub. Sch. Dist.*, No. 1:12-CV-00079-SA-DAS, 2013 WL 5503661, at \*6 (N.D.

---

[2] Stennett initially applied for ten different positions in 2011, but she withdrew her application for two positions—Tupelo High School Secondary Principal and Extra-Curricular Specialist. Those positions therefore are not the subject of this suit. In addition, interviews for the Hancock Leadership Center Curriculum Specialist position to which Stennett applied were conducted prior to Stennett's application submission, and she does not claim age discrimination with respect to that position.

Miss. Oct. 1, 2013).  The district court further concluded that she had "failed to meet her burden regarding pretext by any other theory." *Id.* at \*7.  Stennett appealed.

## II.

Our inquiry into the kind and amount of evidence sufficient for a plaintiff to survive an employer's motion for a summary judgment in an age discrimination case, such as this, is controlled by *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222, 223 n. 4 (5th Cir. 2000) (recognizing that "*Reeves* is the authoritative statement regarding the standard for judgment as a matter of law in discrimination cases"); *see also Reeves*, 530 U.S. at 150 (observing that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law").

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  The Supreme Court has clarified that this means the plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

"Although *McDonnell Douglas* is a Title VII case, we have previously held that its framework is applicable to ADEA cases." *Russell*, 235 F.3d at 222 n.3 (internal quotation marks and citation omitted).  *McDonnell Douglas* and subsequent cases "have 'established an allocation of the burden of production

and an order for presentation of proof in . . . discriminatory-treatment cases.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). Under this framework, the plaintiff first "must establish a prima facie case of discrimination." *Id.* In the instant case, TPSD does not dispute that Stennett has established a *prima facie* case with respect to each job, nor could it. The summary-judgment record indisputably reflects that (i) Stennett was rejected for each of the seven positions; (ii) she was qualified for all the positions; (iii) she was a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)); and (iv) TPSD hired substantially younger applicants for each of the positions in question. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (listing the elements of a *prima facie* case under the ADEA).

When the plaintiff satisfies her burden of establishing a *prima facie* case, the burden shifts to the employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion," and can involve no credibility assessment. *Reeves*, 530 U.S. at 142.[3] Stennett does not dispute that TPSD met this burden in each instance.

Accordingly, at this stage, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [becomes] discrimination *vel non*." *Id.* at 142-43 (internal quotation marks

---

[3] Nevertheless, as we previously have recognized, this burden on the employer is not an entirely *de minimus* one. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 615-18 (5th Cir. 2007). When, for example, an employer provides a "subjective reason for not selecting a candidate," that reason "will satisfy the employer's burden of production . . . only if the employer articulates a clear and reasonably specific basis for its subjective assessment." *Id.* at 616 (citing *Burdine*, 450 U.S. at 258). Stennett, however, does not contend that TPSD failed to meet its burden of production at this second stage of the *McDonnell Douglas* framework, and we therefore will not address any such claim *sua sponte*.

and citation omitted).  This burden ultimately rests on the plaintiff.  *Id*. at 143.  "And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Id*. (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507–08).  "That is, the plaintiff may attempt to establish that [s]he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"  *Id*. (quoting *Burdine*, 450 U.S. at 256).  As both parties concede, it is this precise issue— *viz.*, whether TPSD's proffered hiring rationale is pretextual—that represents the core of our inquiry on appeal.  Critically, at the summary-judgment stage, our ultimate question is not whether Stennett has "proven" or "established" that TPSD's proffered reasons are pretextual but rather only whether she has produced sufficient evidence to create a "genuine issue" as to whether those reasons are pretextual.  *See Jackson v. Cal-Western Packaging, Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *see also Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 203 (5th Cir. 2008) ("While the ultimate burden of proving discrimination remains with the plaintiff throughout the case, within the context of a summary judgment motion, 'the question is not whether the plaintiff *proves* pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.'" (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991)).

In conducting this inquiry, we are not without guidance.  For example, the Supreme Court has clarified that "although the presumption of discrimination drops out of the picture once the defendant meets its burden of production . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the

issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (internal quotation marks and citations omitted). As the Court has explained:

> In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. *Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.*

*Burdine*, 450 U.S. at 255 n.10 (emphasis added). For reasons that will become clear, this proviso is highly significant in the present case, because we ultimately conclude that Stennett's strong showing of a *prima facie* case with respect to each position, combined with her other evidence supporting an inference of pretext, suffices to discredit TPSD's proffered explanation that it did not refuse to hire Stennett because of her age, thus rendering summary judgment inappropriate.

Further, the Court in *Reeves* also emphasized that lower courts must "review the record as a whole" at the summary-judgment stage in evaluating whether evidence supports a finding of pretext. *See* 530 U.S. at 151; *accord Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) ("Since this [Title VII] claim reached the pretext stage, the issue on appeal is whether the totality of the evidence, including the evidence raised at the prima facie case and pretext stages, raises a genuine issue of material fact as to whether [defendant] fired [plaintiff] because of her race."); *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) ("When assessing whether plaintiff has made an appropriate showing of pretext, we must consider the

evidence as a whole."). Likewise, the Supreme Court has made clear that, in order to create a genuine issue as to pretext, Stennett "is not limited to presenting evidence of a certain type." *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989), *superseded on other grounds by statute*, Civil Rights Act of 1991, 42 U.S.C. § 1981. Indeed, in *Patterson*, the Supreme Court found that the district court had committed reversible error by *requiring* the plaintiff to show that she was better qualified than the successful applicant in order to prove pretext. *Id.* at 187–89. In so holding, the Supreme Court explained that "[t]he evidence [a plaintiff] can present in an attempt to establish that [an employer's] stated reasons are pretextual may take a variety of forms." *Id.* at 187. Accordingly, the Court emphasized that a plaintiff "may not be forced to pursue any particular means of demonstrating that [an employer's] stated reasons are pretextual." *Id.* at 188. We have recognized that one method of creating a genuine issue as to pretext is by presenting evidence showing disparate treatment or that the employer's proffered explanation is false or unworthy of credence. *See Sanders v. Anadarko Petro. Corp.*, 108 F. App'x 139, 143 (5th Cir. 2004); *see also Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *Danville*, 292 F.3d at 1250 ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." (internal quotation marks and citation omitted)).

If a plaintiff produces sufficient evidence to create a genuine issue as to the falsity of the employer's proffered hiring rationale, then *Reeves* further instructs that this evidence may, together with the plaintiff's *prima facie* case,

permit a fact finder to infer that discrimination was the true reason behind the employer's decision. *See Reeves*, 530 U.S. at 148.

### III.

We turn now to our *de novo* determination of whether TPSD was entitled to summary judgment on Stennett's ADEA claim. In entertaining a motion for summary judgment under Rule 56, we are required to review all of the evidence in the record—that is the record "taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, we must view the evidence and all reasonable inferences from that evidence in the light most favorable to the nonmoving party, and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (quoting Wright & Miller 300).

Applying this standard here, we conclude that TPSD was not entitled to summary judgment. As an initial matter, Stennett produced compelling evidence establishing her *prima facie* case with respect to each of the seven positions in question. "[T]his evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual." *Burdine*, 450 U.S. at 255 n.10. Yet, we need not decide whether this is such a case where the evidence supporting the

plaintiff's *prima facie* case is alone sufficient to create a genuine issue as to pretext, *see id.*, because Stennett has presented additional evidence that, considered in tandem with her *prima facie* case, would support a jury finding that TPSD's proffered reasons for not hiring her are "unworthy of credence." *Id.* at 256. Specifically, Stennett has presented evidence showing (i) that she possessed comparatively exemplary qualifications for the jobs in question; (ii) that TPSD failed to even interview her for five of the seven positions notwithstanding those exemplary qualifications; (iii) that TPSD relied upon reasons that were peripheral to the job duties or subjective in nature for some of the positions in question; and (iv) that TPSD failed to re-hire on a full-time basis the other three oldest employees at the Fillmore Center.[4] Although we must evaluate all of the evidence "as a whole"[5] in determining whether Stennett has created a genuine issue as to pretext, *see Reeves*, 530 U.S. at 151, we also describe each category of Stennett's evidence that constitutes that whole.

## A. Exemplary Qualifications

Stennett produced substantial evidence showing her exemplary qualifications for the positions in question: three advanced degrees; four administrative and teaching certifications (two of which were AAA); thirty-eight years of educational experience overall; and twenty years of experience within TPSD. Viewed in the light most favorable to Stennett, the evidence

---

[4] Stennett also argues that TPSD offered inconsistent rationales for its hiring decisions and that this evidence is probative of pretext. While we repeatedly have recognized that inconsistencies in an employer's purported hiring rationale may evince pretext, *see, e.g., Staten v. New Palace Casino*, 187 F. App'x 350, 359 (5th Cir. 2006), we need not reach that argument in deciding this case.

[5] The district court, however, reviewed this evidence in a piecemeal manner rather than considering whether the evidence "as a whole" created a genuine issue as to pretext. *See Reeves*, 530 U.S. at 151.

showed that, measured in terms of education and experience, Stennett was more qualified than each of the successful younger applicants, except one: Dr. Tanisha Westerfield-Smith.[6] For example, TPSD refused to hire Stennett for the Tupelo High School Testing Coordinator position,[7] selecting instead a substantially younger applicant with only an AA certification and twenty-three fewer years of teaching experience than Stennett. TPSD also selected a substantially younger candidate for the District Testing Coordinator position who had only an AA certification and only half the years of overall teaching experience as Stennett. Similarly, TPSD refused to hire Stennett as the Administrative Intern at Lawhon Elementary School, and instead hired a substantially younger applicant with only an AA certification and ten years of teaching experience. TPSD also refused to hire Stennett for the Assistant Principal position at Lawndale Elementary, instead hiring a substantially younger applicant with only an AA certification and seven years of overall experience. Moreover, although the successful candidate for the Tupelo Middle School Assistant Principal position possessed an AAA certification, he had twenty-five fewer years of teaching experience than Stennett and no prior experience within TPSD.

In addition, Stennett produced substantial evidence showing that her experience was directly pertinent to all of the positions in question, whereas some of the successful younger candidates lacked any pertinent experience. For example, although Stennett had served as an administrator for a number

---

[6] The evidence showed that Westerfield-Smith had completed a doctorate, but nevertheless had only eleven years of experience overall and one year of experience within TPSD.

[7] One of Stennett's duties at the Fillmore Center had been to serve as the "testing coordinator" for grades 2-12, in which she was "responsible for all the testing, the monitors, getting the tests, securing them, and getting them back to the different schools."

of years, TPSD refused to hire Stennett for the Administrative Intern position at Lawhon Elementary School.  The record reflects that an administrative intern's primary duties involve assisting the principal and assistant principal with administrative duties.  Nevertheless, Christy Carroll, who conducted the interviews for the position, explained that the position's duties were indistinguishable from an assistant principal's duties.  Yet, notwithstanding the fact that Stennett had served as an assistant principal at the alternative school for several years, Carroll refused to even interview Stennett, and instead hired an individual who lacked *any* administrative experience at all.  Similarly, despite Stennett's relevant experience as an assistant administrator, TPSD also refused to even interview[8] her for the Assistant Principal position at Lawndale Elementary.  Instead, TPSD selected Tyrone Catledge for the job, who was only 29 years old at the time of being hired.  Significantly, Catledge also lacked any prior administrative experience, and instead had been teaching "business tech" at Tupelo High School.  Indeed, the record reflects that Catledge only received an "entry level administrator" certification in September 2011—*after* being hired for the position.

A reasonable jury could consider the strength of Stennett's qualifications vis-à-vis the successful younger applicants as undermining the credibility of TPSD's proffered hiring rationale—*i.e.*, that the younger successful applicants were selected because they were all better qualified than her.  Indeed, evidence of a plaintiff's superior qualifications is directly probative of pretext, *Patterson*, 491 U.S. at 187, and Stennett need not establish that she was "clearly better qualified" in order for this court to consider her comparatively exemplary qualifications in tandem with the other evidence, outlined *infra*, supporting

---

[8] The principal who made the ultimate interview decisions could not recall why he did not interview Stennett.

No. 13-60783

the inference that TPSD's proffered hiring rationale is pretextual. *Pratt v. City of Hous.*, 247 F.3d 601, 607 (5th Cir. 2001) (holding that plaintiff's exemplary qualifications in tandem with other evidence created a genuine issue as to pretext); *see also Sanders*, 108 F. App'x at 146 (same).

### B. Failure to Interview

Stennett additionally argues that TPSD's failure to interview her for five of the seven positions[9] notwithstanding her exemplary qualifications provides further support for a finding of pretext. It is undisputed that Stennett did not receive interviews for the following five positions: (1) Tupelo Middle School Assistant Principal; (2) Lawndale Elementary Assistant Principal; (3) Lawhon Administrative Intern; (4) High School Advancement Academy Lead Teacher; and (5) District Testing Coordinator at the Central Office. As discussed above, the evidence viewed in the light most favorable to Stennett shows that she possessed qualifications and experience directly pertinent to these positions. With regard to the assistant principal and administrative intern positions, the evidence demonstrates that Stennett not only possessed two certifications in school administration (AA Administrator and AA Secondary School Principal) but also had worked in a supervisory administrative capacity at TPSD's alternative school for many years. Stennett's prior experience as an administrator was corroborated through the testimony of Fillmore Center staff who consistently described her position as "assistant principal," "assistant administrator," or "assistant director." Further, with regard to the "lead teacher" and "testing coordinator" positions, the evidence showed that Stennett had prior experience as a "lead teacher" at the Bissell Alternative School, and

---

[9] In addition, the record contains evidence that Stennett was not interviewed for the three positions to which she applied in June 2010. However, Stennett does not challenge TPSD's failure to hire her for those positions and, therefore, we consider only the seven positions at issue on appeal.

that one of her duties at the Fillmore Center had been to serve as the school's "on-site test coordinator/assistant test coordinator."

In light of Stennett's exemplary qualifications, pertinent experience, and excellent performance reviews, a reasonable juror could find it suspect that she would not even be provided the opportunity to interview for the vast majority of the positions. Indeed, we previously have recognized that an employer's failure to interview a candidate can "help carry [plaintiff's] burden" of proving pretext. *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1153–54 (5th Cir. 1982); *accord Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434–35 (6th Cir. 2002) ("[Plaintiff] has presented evidence that he applied for five positions for which Defendant–Appellee concedes he was qualified, and for which he was rejected before he was even given an interview. It strains credulity to conclude that, not once, but five times, the other employees who applied for the open positions were so significantly more qualified than [plaintiff] that he was not even worthy of an interview.").

Although the record indicates that the individual principals had the *ultimate* power to decide whom to interview, the record nevertheless supports a finding that the individual principals conferred in deciding not to interview Stennett. For example, Brock English, who was the principal at Lawndale Elementary and who chose not to interview Stennett for the open Assistant Principal position there, testified that he considered the recommendations of some of his "trusted colleagues" in determining whom to interview for that position. Although English could not recall the names of all the "trusted colleagues" on whom he relied, English specifically recalled that he conferred with Kristy Luse, who was the Principal at Tupelo Middle School at the time. Vitally, the record reflects that Luse likewise refused to interview Stennett for the available Assistant Principal at Tupelo Middle School.

17

In this connection, the record also reflects that each of the principals' hiring decisions were subject to approval by the TPSD superintendent, who, at the relevant time, was David Meadows.[10]  Notably, the record reveals that Stennett met with Meadows on June 14, 2011, during which she discussed with him her desire to continue working with TPSD.  At this meeting, Stennett also communicated her interest in available positions to Meadows, who told her to "make sure [her] application [was] in[.]"  Nevertheless, Meadows, who was in charge of conducting interviews for the District Testing Coordinator position, refused to even interview Stennett for the position.  Moreover, *after* his meeting with Stennett occurred, Meadows proceeded to approve the various principals' hiring recommendations for nearly all[11] the other positions to which Stennett had applied.  Although Meadows previously had told Stennett at their meeting that he "would assist her if at all possible," Meadows provided no explanation for why he did not inquire why Stennett was not recommended for these positions, such as the Lawndale Assistant Principal and Lawhon Administrative Intern positions, given that he was aware of Stennett's qualifications and interest in such positions.  In sum, viewing the evidence in the light most favorable to Stennett and drawing all reasonable inferences therefrom, we conclude that a jury reasonably could determine that it was not a mere coincidence that Stennett was denied interviews for the vast majority of these positions notwithstanding her exemplary qualifications, pertinent experience, and excellent performance reviews, particularly where some of the

---

[10] Meadows served as interim superintendent of TPSD from April 2011 to May 31, 2012.

[11] The record indicates that Meadows approved the Tupelo Middle School Assistant Principal position on June 13.

principals indisputably conferred in their decision-making process and where the superintendent was clearly aware of Stennett's interest in the available positions.[12]

### C. Suspect Hiring Criteria

Stennett also points to evidence showing that TPSD's explanation for its hiring decisions relies upon qualifications nowhere listed in the job postings, some of which are "subjective" in nature. For example, with regard to un-listed qualifications, she emphasizes that the proffered reason for hiring Tyrone Catledge for Lawndale Assistant Principal was his background in "STEM" (*i.e.*, science, technology, engineering, and math) education, but that such qualifications were nowhere listed in the job posting. Similarly, she argues that the hiring decisions for other positions were purportedly based largely on qualifications nowhere listed in the job postings or preferences: Tupelo Middle School Assistant Principal (experience teaching history and language arts and with guidance counseling), Lawhon Administrative Intern (prior experience at the school where students leaving Lawhon would move next), High School Advancement Academy Lead Teacher (math teaching experience), Tupelo High School Testing Coordinator (ability to understand the accountability system and help teachers understand data), District Testing Coordinator (math certification, experience as assistant principal at high school, and assistance with high school testing).

---

[12] Although Stennett does not claim discrimination with respect to the available English-teaching position at the alternative school, we also note that Stennett communicated her interest in this position to Larry Harmon, the school's director, when he informed her of the job. Although Harmon explained that he would "get back with [her]" about an interview, Stennett never heard back from him despite calling him "quite a few times" and even leaving a note for him. The position ultimately was filled, and Stennett was never interviewed. Harmon likewise refused to interview Stennett for the High School Advancement Academy Lead Teacher position.

Stennett also points to evidence indicating that some of TPSD's hiring decisions were purportedly based, in part, upon subjective considerations. For example, Brock English, who conducted interviews for the Assistant Principal position at Lawndale Elementary, explained that he was "looking for . . . a candidate . . . to kind of *complement* [him]." Similarly, Stennett points to evidence that Christy Carroll, who made the initial hiring recommendation for the Lawhon Administrative Intern, "*felt* that [the successful applicant] would be a good instructional leader for her teachers."

This court has held that an employer's reliance on "previously unmentioned" job requirements can raise a "genuine issue of material fact as to pretext." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010), Relatedly, we have recognized that subjective hiring criteria "'provide opportunities for unlawful discrimination' because the criteria itself may be pretext for age discrimination." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (quoting *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993)). This case illustrates how reliance upon subjective and previously unmentioned or peripheral hiring criteria could help support a rational jury's finding of pretext. Specifically, with respect to the Lawndale Elementary Assistant Principal position, a rational jury would not have to believe that a background in teaching science and technology (*i.e.*, STEM) has any direct or crucial nexus to being an assistant administrator at an elementary school, particularly where the job posting did not list such experience. Indeed, considered in tandem with Stennett's other evidence, a rational jury could conclude that TPSD's reliance upon this factor was a *post-hoc* method of covering up age-based animus. Similarly, the only other rationale offered by TPSD to explain hiring Catledge over Stennett was that he would "complement" the principal, Brock English. TPSD's reliance upon such vague and abstract criteria for rejecting Stennett could further add support to a

finding of pretext. *Accord Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) ("[A] hiring official's subjective belief that an individual would not 'fit in' or was not 'sufficiently suited' for a job is at least as consistent with discriminatory intent as it is with nondiscriminatory intent: The employer just might have found the candidate 'not sufficiently suited' *because of* a protected trait such as age[.]").

If considered in isolation, Stennett's "hiring-criteria" evidence might not be sufficient to support a rational inference that TPSD's proffered hiring rationales are pretextual. *See, e.g., Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) ("The mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext."). Yet, as we have explained, Stennett does not rely on this evidence alone in order to cast doubt on TPSD's proffered hiring rationale, and therefore it would be improper to reflexively dismiss this entire strand of evidence as irrelevant to our inquiry into whether the evidence, viewed as a whole, would permit a rational jury to disbelieve TPSD. *See Shackelford*, 190 F.3d at 404. Considered in conjunction with other evidence probative of pretext, a rational jury could conclude that TPSD's significant reliance upon unlisted and, in some instances, subjective job qualifications for filling the positions contributes to its suspicion of the veracity of TPSD's purported hiring rationale.

## D. Failure to Re-Hire the Other Oldest Employees

Stennett also points to evidence indicating that the four oldest employees at the Fillmore Center, including herself, were not retained by TPSD on a full-time basis after the "outsourcing," while other younger employees were retained and transferred to other positions. In particular, Stennett, who was the oldest member of the Fillmore Center staff, emphasizes that TPSD failed to re-hire on a full-time basis not only her but also Toni Bew, who was 60 years old at the time. The record shows that Bew was only able to secure temporary,

21

part-time work with TPSD.    Likewise, the record reflects that Bobbie Montgomery, who was also among the four oldest members of the Fillmore Center staff, was unable to secure a job with TPSD following the outsourcing despite applying for multiple jobs within the district.  Although this evidence on its own likely would not support an inference of pretext, a rational juror could conclude that TPSD's failure to re-hire these employees on a full-time basis further weakens the credibility of TPSD's proffered rationale for not hiring Stennett, thus buttressing a reasonable inference that the failure to re-hire Stennett was based on her age. *See, e.g., Pratt*, 247 F.3d at 607 (reversing summary judgment in favor of employer because a genuine dispute of material fact existed as to pretext in light of multiple pieces of evidence presented by plaintiff, including "allegations that [supervisor] discriminated in favor of white applicants on other occasions").

\* \* \*

This is a factually unusual case.  Indeed, as the foregoing inventory of evidence makes clear, this is not an employment discrimination case in which the plaintiff was denied a single job. *Compare Moss*, 610 F.3d at 920.  Nor is it a case in which the plaintiff lacked the relevant experience. *Compare id.* at 926-27.  Rather, in this case, the plaintiff was denied seven different jobs notwithstanding experience, education, and proven ability that made her qualified for them. *See Sanders*, 108 F. App'x at 146 (holding that summary judgment was inappropriate where plaintiff presented evidence of comparative qualifications, in addition to other evidence probative of pretext).  But that is not all.  This is also a case where the employer refused to even interview the plaintiff for five of the seven positions. *Hopson*, 306 F.3d at 434-35 (holding that plaintiff had created a genuine issue as to pretext where he presented evidence showing, *inter alia*, that he was not interviewed for five positions).  For some of these positions, the successful younger candidates lacked any

administrative experience, and the hiring official could not even provide an explanation for why Stennett, who had numerous years of administrative experience, was not even offered a chance to interview. Moreover, this is also a case where the acting superintendent was admittedly aware of plaintiff's qualifications and efforts to secure a position but nevertheless refused to interview the plaintiff for an available position and also approved the hire of substantially younger candidates who lacked any administrative experience. And, this is also a case in which the employer's proffered rationales are based, in part, on un-listed, peripheral or subjective criteria, and in which the employer also failed to rehire on a full-time basis some of the other oldest employees at the Fillmore Center. Viewed as a whole and in the light most favorable to Stennett, we conclude that this evidence presents a set of facts from which a reasonable juror could disbelieve TPSD's claim that it refused to hire Stennett because she was less qualified. Considered together with the evidence establishing her *prima facie* case, Stennett therefore has produced sufficient evidence to permit a rational jury to conclude that TPSD's real reason for not hiring her was her age. *Reeves*, 530 U.S. at 147 ("'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" (quoting *St. Mary's Honor Center*, 509 U.S. at 511)). Summary judgment therefore was inappropriate.

## IV.

In reviewing a grant of summary judgment based on a finding that plaintiff failed to show a genuine dispute as to pretext, we must determine whether a rational jury *could*—not probably would—conclude that the employer's proffered non-discriminatory hiring rationale is pretextual. Here, because the evidence viewed as a whole and in the light most favorable to

No. 13-60783

Stennett could support a rational inference that TPSD refused to hire her because of her age, the district court erred in granting summary judgment in favor of TPSD on Stennett's ADEA claim. Accordingly, we REVERSE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.